Still hair argument, a state of Kevin Schwing versus Lilly Helfman. Thank you, may it please the court, my name is Ellen Boshkoff, I represent the appellants in this case, Eli Lilly and Company, the Lilly Severance Pay Plan, and the Employee Benefit Committee. And I'd like to reserve two minutes for rebuttal. Grant. The district court's role in this case was to act like a court of appeals. The court's role was to review the reasonableness of the Employee Benefit Committee's decision based on the administrative record. The court did not do that, and that is why we're here on this appeal. Are you saying there can never be a trial in an ERISA case? No. I think under Glenn's... Keep your voice up, please. I'm sorry. Thank you. Is that better? I think there can be evidence outside the record, such as on the existence of a conflict, but the claim decision is supposed to be based on the administrative record. The district court here found after trial that Schwing did not admit to falsifying full reports. That's different from saying he didn't falsify them. He didn't make a finding one way or the other, but he did find that Schwing did not admit to falsifying the data. That was a credibility determination made, I suppose, because there was a conflict between Lilly's representatives and Schwing. Was he free to do that? No. He was not free to make a credibility determination based on what Mr. Schwing said and what Lilly may have said. That wasn't the issue. The issue before the district judge was, was the claim decision correct based on a reasonable, because it's an abuse of discretion standard, based on the terms of the plan and the administrative record. ERISA doesn't confer trial-like rights on claimants. ERISA is, by design, a much more streamlined procedure. Judge Greenberg talks about experiences. We had a case we heard argument on just three, four months ago with very experienced ERISA attorneys. I think among the whole group, they'd only seen about two ERISA trials in their whole career. It is somewhat surprising. Now, I understand here there were claims other than, I guess there were several complaints, several claims in the complaint. Maybe some of them were more triable or trial-worthy or permissible to be tried than perhaps this one. But it is very unusual to see a trial off in an ERISA case, isn't it? Yes, and we did move for summary judgment and believe that it could be decided as a matter of law based on the administrative record. The judge denied that motion. There were some other issues that went to trial. Initially, his denial was based on there needs to be evidence uncovered relating to a conflict of interest. But actually, with a six-day bench trial, it was not limited to that. And we do believe that the evidence of Mr. Schwing getting up and testifying about what he says happened to him is way outside the administrative record and not relevant to this decision. Now, Mr. Schwing did bring several claims, and one of them was for wrongful discharge. And he brought a claim under ERISA Section 510 to say that he was discharged to prevent him from getting his benefits. We won that claim on summary judgment. So the claims that could have invoked this broader presentation of facts were not there. Well, you know, it's somewhat similar, isn't it, to Social Security? Because in Social Security disability cases, there are always questions of facts. And the district court, though, invariably decides the case on the record on summary judgment. I never heard of a trial in a district court as to whether a claimant was actually disabled when doctors came to the court and so forth. It's always on the record. And there's a certain obvious similarity to ERISA. Yeah, I agree. And this podium is a little small, so I'm kind of juggling my papers here. But this is the administrative record. Would you keep your voice up, please? I'm sorry. Would you? This is the administrative record. I just made copies. I don't even have to. It's very limited. This is Exhibit 9. It's the claim record. This is the appeal record. This is the information that the claimant's decision should have been based on. And one thing we're asking in this appeal is that this court do what the district judge didn't do, which is look at this very limited administrative record, look at the employee benefits decisions, which are reflected in two letters, and look at the claim and determine whether the Employee Benefits Committee's decision that Mr. Schwing was making was in line with some of the findings of the district judge, some of the conclusions, where he said, for example, that Summers owed Schwing a duty of neutrality, where he said that the committee could not make a credibility determination in favor of Lilly without doing a further investigation or, indeed, perhaps having a hearing. So just sending it back to him with the findings that he made would not be enough, would it? No, I agree. I mean, we are asking that you at minimum clarify those legal errors. And he found the conflict of Ms. Summers just, what's the word, tainted the entire action. That's right. So it just couldn't be sent back to him to say review it off the administrative record. Right. And we actually think that this court has the ability to review the administrative record just the same as the district court does. You're seeking final relief here, aren't you, turning down the claim? Correct. So that is where we are at. You're saying we could do that as a matter of law? Absolutely. You're saying the record before us is such that this case should end here. The case has been going on for six years. We've had a six-day bench trial. It's taken us a while to get here, and we would like the case to be over. And I think it is a very limited administrative record. The standard review is whether the Employee Benefits Committee decision was reasonable to find that Mr. Schwinn was discharged for misconduct and not eligible. Now, that decision could be reasonable based on what was before that committee, even though you might be able to develop a different set of facts at a trial. Nevertheless, that decision could have been reasonable. That's correct. And one of the things that didn't happen here is we didn't see Mr. Schwinn developing a full factual record before the Employee Benefits Committee. We see very little from Mr. Schwinn. His lawyer wrote two very short letters, basically disputing that he was discharged for misconduct and alleging that it was a pretext. Lilly submitted very substantial, detailed explanations of Mr. Schwinn. So you're saying, look, this doesn't go to the district court as a de novo matter. This goes as a review matter. That's correct. The district court went to great lengths to point out where Ms. Summers had erred. Is that correct? Yes. I'd like to hear from you on behalf of where you think, in what regard, you think Ms. Summers comported herself properly. Okay. The district court concluded that Ms. Summers could not act as an attorney for Lilly and an attorney for the Employee Benefits Committee. We believe that is error. This circuit held quite some time ago that an Employee Benefits Committee doesn't have to consult outside counsel, that you can have inside counsel, such as Ms. Summers, advise you. Putting it, though, more into the framework of Glenn, the new Supreme Court case, the court says in Glenn, yes, there is an inherent conflict when a plan is self-administered and self-funded because the claims are going to be paid out of general assets. That is the conflict. That applies to Ms. Summers. That applies to the Employee Benefits Committee. They all work for Lilly. But as to the rest of the things that the district judge thought were improper, we disagree. Ms. Summers presented all the evidence timely submitted by Mr. Swing. She did no more than what a reasonable lawyer would do in terms of providing advice to the Employee Benefits Committee, and it's certainly undisputed that Employee Benefits Committees are entitled to get advice from lawyers. You see, you mentioned Glenn, and if we were to send it back, I think there's some support in Glenn where the district court, having found that her conflict tainted the whole proceeding, that there's support in Glenn for saying that, although it's a combination of factors and conflict is just one factor, Glenn also says that the conflict of interest could prove more important, perhaps of great importance. And given how the district court viewed the conflict here, wouldn't one anticipate he'd come to the same conclusion even after Glenn? Well, Glenn says the conflict is one factor. You still have to look at the other evidence, and that's what the district court didn't do. Now, for the conflict to be dispositive, the other evidence would have to be even. As Glenn talks about, you know, a conflict can serve as a tiebreaker. There's no need for a tiebreaker here. The evidence isn't like this. It's like this. And so the conflict is really not going to be dispositive in this case. It cannot be. And based on this administrative record. I mean, the district court may disagree, and that's one of the reasons why we ask at a minimum that the court clarify what the standards are. But the fundamental error that the judge made was look only at the conflict and not at the record. And I think that's the issue. Now, if you do look at the record, as I indicated, there's very detailed information substantiating the employee benefits decision, which, again, has to be held if it is reasonable. There's no doubt under the record that Mr. Swing got a full and fair review as required by ERISA. Again, you don't get a trial. You don't get trial-like rights. You don't get the stuff. You get limited things. You get evidence that's been used. You get the chance to respond to that evidence, and you have the opportunity to have somebody look at that evidence. Mr. Swing got all this stuff. Everything that was timely submitted was given to the employee benefits committee. So going back to the district judge, what we have is a record that supports full and fair review, a record that very amply supports what the employee benefits decision, employee benefits committee decision was, and we have a very deferential standard of view. So for those reasons, we believe that the district judge should be reversed and that this court should enter judgment for the employee benefits committee. Thank you, Ms. Fosker. Mr. Mishra? May it please the Court? Excuse me. My name is Michael Mishra. I represent the estate of Kevin Swing. Unfortunately, Mr. Swing passed away during the pendency of this case. What I'd like to start out with is addressing, first of all, the full and fair review and the fact that I think that this judge did take into consideration the administrative record, but what the judge was doing was looking at the fact that Mr. Swing did not get a full and fair review by the employee benefits committee. What I'd like to point the Court to is the fact that if you look at the testimony from Lisa Schleyhuber, who was the representative of the employee benefits committee, it's very clear that she testified at trial that she said that the employee benefits committee was concerned with whether or not Mr. Swing actually did commit the falsification or the misconduct, and she was very close thereafter impeached, and it was made clear that the employee benefits committee did not care at all whether or not he actually committed that. That's your reading of that section. It's not necessarily mine. Okay, well, and I think the judge found that as well, and so the employee benefits committee did not consider at all any evidence that was submitted on Mr. Swing's behalf. Oh, no, wait a minute. The employee benefits committee did not cause an investigation to be launched, did not conduct a hearing at which it took testimony, but where is there any requirement that it did so? It certainly considered the letters that were timely submitted to the committee. I disagree. I think that the testimony of Lisa Schleyhuber was that, I think she specifically stated in her testimony, she said that they never considered the misconduct was correct. She did not want any information from Mr. Swing. There was no evidence that he could have submitted to show that he did not commit it, so I think the interpretation from that was they were not at all concerned with whether or not he actually committed misconduct, and I think that goes to the bottom line, which is he did not get a full and fair review. When those letters were submitted, on top of that fact, there were letters that were submitted by Mr. Swing April 13th and April 15th. You mean the Laura Lemons letters? Yes, those letters. Well, they weren't even sent to the EBC. They were sent to a paralegal. And they clearly got to Sandra Summers. And they didn't deal with severance benefits or the committee. They didn't even mention the committee's name. He was looking for his job back. He was looking for help getting his job back in those letters. If you look at the April 13th letter, he's specifically discussing the grievance, which was raised by his attorney, Elliot Strokoff, and he submitted his documents regarding the grievance, which was the reason that he said he was terminated, which would have made him severance eligible. Allegedly, he fessed up, did he not, the decedent. He said he did not do that. In fact, that he did do the things that his employer had accused him of. No, I think his testimony was that he did not do those things. And, in fact, in one of the letters raised by his attorney, he said that, in fact, he asked Mr. Howland and Ms. Martin to call back those practices because, in fact, they were asking the wrong questions and that they conceded that he was actually at those practices. So there was clearly polar opposites in the positions that were being raised. Maybe it's just the many years as a trial judge, but you look for these kernels of truth. And I was very early this morning reading the record again, and I reread the November 8th letter from his attorney, which talks about the normal error rate is attributable. This is vis-a-vis his report. The normal error rate is attributable to the fact that the entries are made on a laptop computer. So the attorney is saying computer error. Well, that's independent of what Mr. Howland said because Mr. Howland and the attorney, when he wrote that letter, had no idea of what Howland had written in his summary of the August meeting when Howland said that Schwing blamed it on computer error. I find that very interesting because Mr. Schwing is saying that Howland is lying, essentially. Correct. But here Howland says he admitted that he said it was computer error. And interestingly, without knowledge of what Howland had said, his attorney is saying the same thing. Doesn't that just support the fact that Schwing admitted to Howland? No, I think what Mr. Schwing explained during the trial was that when he had that conversation with Mr. Howland at that time, he was trying to come up with reasons why this could have happened. But he also, and Mr. Howland also confirmed in that writing, that Mr. Schwing asked him to call those practices back because he was asking the wrong question. So it's the same argument, just on the other side of that coin. Mr. Schwing is saying, look, I don't know why you've gotten these responses. I didn't do this. It could be this, it could be that, it could be the other thing. But clearly I'm asking you, please call back these practices because you're asking the wrong question. Mr. Schwing has been making sales calls for 21 years on these practices. Let's just go round and round to the essential question as to whether the EBC was arbitrary and capricious in its decision to disbelieve the deceiver. I think that the EBC did not even consider any evidence that was submitted by Mr. Schwing. And I think that some of the evidence, for example... What did he submit that it did not consider? And don't tell me the lemon letters because they weren't even submitted to the EBC. There was an email by Mr. Howland to Ms. Summers that talked about the significance of the doctors, whether or not they were K doctors versus S doctors. And the significance of that was because if you were a K doctor, you only got credit for making calls on K doctors but not S doctors. So the argument was, or the implication is, is that why would anybody in their right mind make a false call on an S doctor because you don't get credit for that when you log that into your computer. Ms. Summers decided she was not going to turn that information over to the employee benefits committee. She's making a determination at that point. She's stepping into the shoes of the employee benefits committee and saying, yeah, I'm not going to turn that over. He's not getting fair shake to have that information go to the employee benefits committee, and they're not having the opportunity to evaluate that in light of what is being raised by Mr. Schwing and his attorney. And I disagree with the panel that I think those April 9th letter and the April 13th letter, especially given the fact that Strokoff has raised the issue of the grievance, that they had the obligation to review that information and they weren't given that opportunity. And the argument is, well, that was submitted after. No, but he's telling Laura Lemons why he thought he was wrongfully terminated. That's already before the committee, through his attorney. And he's now providing supporting documentation. Supporting that he says so to a paralegal? I don't know that that's supporting. She's a paralegal to Sandra Summers, and Sandra Summers gets those documents. She knows what they're for, and she decides not to present them to the committee. How does the Glenn case impact on this matter, on the standard of review and such? Does it have any effect on the state? Well, it does. And, first of all, I think it can be interpreted in two ways. I think that there's an argument to be made that Glenn does not disrupt the sliding scale. And so that the conflict is clearly this plan, the severance plan, was case-by-case funded and administered by Lilly. And then there are all the other factors in terms of we still think that there was a conflict with Attorney Summers. And there was not a full review. But the factors under Pinto would still be considered. So there's an argument that there would be a heightened review under Glenn. But in addition to that, I think that when you read Glenn, there's an argument that what the court is saying is that you— I'm sorry. What the court is saying is that you can use evidence outside the administrative record to evaluate those factors. And if you're evaluating those factors, then that could be used to determine whether or not there's an abuse of discretion. I think you might be right to insert limited circumstances where, for example, I think Glenn speaks of where an insurance company administrator has a history of biased claims administration. That would probably not be part of an administrative record. Or where the insurance company could come forward and show that it actually trains its people on how to handle these cases, which I think at least has been alleged is the case here, but I don't know if that's a part of the record. Well, in this case, it was the first severance claim that they had ever had. So I think what— First severance claim? First severance claim that the Employee Benefits Committee ever had. Ever had? But I think that that emphasizes the fact that that's why this got jumbled. What happened was Sandra Summers had, from the very beginning, before the Employee Benefits Committee ever got a piece of evidence on this claim, she sends an email to everybody on the committee saying, deny the claim. Well, wait a minute. Yeah, sure. Because she had two of her employees saying that not only was there this evidence of falsification of record, but there was an admission by Mr. Schwing that he had done so. So that is a clear violation. I agree with that, if indeed it was the case. So she was well within her rights, I think. Two and two is four. I think that at that point, I think the judge was correct in finding that there was the conflict that she should have. I think she can advise the committee on things like, you know, the interplay between a welfare plan and, say, a severance plan or whether or not— Well, the committee apparently asked— As a matter of fact, in the record, the committee asked for nothing. I mean, this was—everything was unsolicited. All the actions by Summers were unsolicited. Nothing that she did was ever solicited by the Employee Benefits Committee in this case. Who was supposed to do what she did then and have it be permissible, in your view? The Employee Benefits Committee, and that if they had a question— But how were they going to get—who was going to send them the record? Who was going to be the gatekeeper and not be in conflict? I think the members of the Employee Benefits Committee— But how were they going to get the record? Who was going to send them— Well, the information they're going to ask for, they're going to be told, you're going to have a claim that's going to come to you. Who's going to tell them? I think Sandra Summers can say, you're going to get a claim for severance, and then they're going to ask, this is the information that we need, or what information are we allowed to get? And she can advise them, you're allowed to ask for this, or those kinds of questions she can tell them. But I think she steps over the line once she says, this is how you have to respond. How did she step over the line? That's really what you've been arguing in your brief and here today. Correct. How did she step over the line? I think she steps over the line once she tells them how they have to find. And all the way through, she's involved in the termination, uses the word recommended, Okay, she recommends denial. That's what she does. She's involved in the termination in the beginning, and then at trial she says she's not involved. But in her deposition and as a lawyer, I think she would have understood that. And in the context of this case, how is that impermissible? That's impermissible because she's usurping the responsibility of the Employee Benefits Committee because they're the ones that are supposed to make that determination, not her as the attorney. And by her stepping into those shoes, she now becomes the de facto fiduciary. Doesn't she have a responsibility to present, assuming that she's being honest? Absolutely. The truth. No, she has the responsibility to, if you will, frame the issue. But she does not have the responsibility for making the decision for the committee. She can frame it and tell them here's what the issue is, but she does not have the responsibility for influencing it or making the decision for them. That's where she steps over the line. And, in fact, if you look at the brief and if you look at the severance language. She was counsel for the committee, was she not? Correct. So she can't function as counsel? No, I think she can function. But once she steps over that line, she is now acting against the interest. So she can give them the papers that they asked for. Correct. She can't tell them what they should look at. And she can't advise them as their counsel of a recommended disposition? That's where she steps over the line. So she's not counsel then? She is counsel. She's counseling them. You would have her be a paper pusher who just pushes the paper she's asked for. No. If they have a question about how the severance plan interacts with the welfare plan or those questions about the functioning of the plans, I think she can do that. But it's the committee's responsibility to evaluate the evidence and give a full and fair review for Mr. Swing's claim. I think once she steps into those shoes and says this is the decision that the committee should decide, that's when she steps over the line. Thank you. Thank you. Rebuttal? Just to respond to one question, the PowerPoint that trains the Employee Benefits Committee is in the evidence and it was admitted at trial. It's in their appendix at 162. It's Exhibit 82, and that is the demonstration of the training. What I want to, I think, leave this with is this case has taken a long time to get here, and I want to make clear what we are asking for. I know we might not get it, but what we're asking for is for this court to do what the district judge didn't do, which is look at this very limited administrative record, apply the standard of review. The record has been fully developed, and this court is as good a position as the district court in doing that. We believe that that record clearly supports the Employee Benefits Committee's decision, which is also reflected in the record, and that the district judge's opinion should be reversed and that judgment should be entered on behalf of the public. Thank you. Thank you. Thank you very much. The case was very well argued. We'll take it under advice.